*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re DANDRON/FIELDS, Minors.

UNPUBLISHED
December 12, 2019

No. 348383
St. Clair Circuit Court
Family Division
LC No. 18-000410-NA

In re B. S. FIELDS, Minor.

No. 348389
St. Clair Circuit Court
Family Division
LC No. 18-000410-NA

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother, A. Fields, appeals the termination of her parental rights to the minor children, AMD, AED, ALD, and BSF, and respondent-father, M. Fields, appeals the termination of his parental rights to BSF. The trial court terminated respondents' parental rights under MCL 712A.19b(3)(g) and (j). Because we conclude that there are no errors warranting relief in either appeal, we affirm.

Respondents met and married in 2011. At the time, respondent-mother had three children from previous relationships: AMD, AED, and ALD. In January 2013, respondent-mother gave birth to respondent-father's son, BSF. Respondents' relationship was marred with incidences of domestic violence and substance abuse.

Between 2014 and 2017, Child Protective Services (CPS) investigated respondents several times for neglect, substance abuse, unstable housing, and domestic violence. In an effort to avoid removal of the children, respondents were offered voluntary services. This avenue proved unsuccessful and the children were twice removed from respondents' care, once in 2014

and again in 2016. After both removals, respondents were offered services over several months and the children were eventually returned to the family home.

Sometime during the summer of 2018, respondents rented their basement to C. Hillaker and M. Racz. Because there was no kitchen or bathroom in the basement, Hillaker and Racz used the facilities on the first floor where respondents and the children lived. Several months after Hillaker and Racz moved in, on December 11, 2018, law enforcement officers conducted a narcotics raid at respondents' home. Hillaker was the subject of the search warrant and the corresponding raid. During the search of the home, law enforcement officers found in the basement methamphetamine, a scale, and other drug contraband. In respondents' bedroom, the officers found, among other things, two pounds of marijuana, two glass pipes, and three counterfeit one-hundred dollar bills. In addition to the drugs and drug contraband, the officers observed that the home was filled with an inordinate amount of garbage, clutter, and debris. The conditions in the home impeded the officers' travel throughout the dwelling.

After the raid, respondents were taken into custody. Respondent-mother attempted to conceal 0.4 grams of crystal methamphetamine in her undergarments. It appears that criminal charges against respondent-father were eventually dismissed, but respondent-mother was bound over on charges related to possession of methamphetamine. The children were taken into protective custody and the Department of Health and Human Services (DHHS) filed a petition seeking termination of respondents' parental rights at the initial disposition.

Following an adjudication trial on February 6, 2019, the trial court found statutory grounds to exercise jurisdiction over the children. It then conducted a hearing on February 13, 2019, and found that clear and convincing evidence established the statutory grounds to terminate respondents' parental rights and that termination was in the children's best interests. These appeals followed.

For her first issue on appeal, respondent-mother argues that the trial court erred by assuming jurisdiction over the children. We disagree.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id*. To establish jurisdiction, the petitioner must prove by a preponderance of the evidence that a statutory basis exists under MCL 712A.2(b). *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). We review a trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A trial court's findings of fact are "clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

In this case, the trial court exercised jurisdiction under MCL 712A.2(b)(1) and (2), which provide that a court has jurisdiction over a child:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . .

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

We conclude that the allegations in the petition were established by a preponderance of the evidence and supported a statutory basis for jurisdiction under MCL 712A.2(b)(1) and (2). Accordingly, the trial court did not err when it assumed jurisdiction over the children.

Respondent-mother argues that the court erred in taking jurisdiction of the children because there was no evidence of maltreatment of any of the children. She claims that the children were properly fed, clothed, and sheltered, and that their educational needs were being met. Indeed, she asserts that all of her children appeared healthy and properly fed. While there was evidence that respondent-mother provided for her children's most basic needs, overwhelming evidence established that respondent-mother was not providing proper care and that the home environment, because of criminality and depravity, was unfit for the children to live in.

Respondent-mother's argument completely ignores the deplorable condition of the home and the activities occurring in the home. The evidence established that at the time of the police raid, the home was in deplorable condition. There was so much filth and clutter present that members of the drug task force had difficulty moving about. Photographs depicted a home cluttered not only with clothing and household items, but also garbage and debris. Dirty dishes were soaking in filthy water and the countertops and kitchen table were littered with food, garbage, and other debris. The condition of the bedrooms, particularly the two occupied by the children, was also shocking. In addition to the overwhelming clutter, the children did not have suitable bedding. The children's make-shift bedding was blackened with dirt and grime. Animal feces was noticed on a bedroom floor and the home was infested with cockroaches, fleas, and bedbugs. The children were also infested with head lice.

Further, there was overwhelming evidence of drug use and trafficking within the home. When members of the task force attempted to enter the dwelling, they discovered one of the doors barricaded with a metal rod. Surveillance cameras were mounted on the exterior and interior of the home. The monitors for those cameras were found in respondents' bedroom. Also discovered in respondents' bedroom was two pounds of marijuana, two glass pipes, three empty Suboxene packages, and three counterfeit one-hundred dollar bills. In the bathroom off the kitchen, the task force found floating in the toilet bowl a sealed package of Suboxene. In the basement where Hillaker lived, the officers found a larger quantity of methamphetamine, a scale, and money. The trial court's finding that there was drug trafficking occurring within the home is supported by a preponderance of the evidence.

The record does not support respondent-mother's assertion that there was no evidence linking her to the drugs. Drugs and drug contraband were found in the bedroom she shared with respondent-father and in the only bathroom in the home. Further, a small quantity of methamphetamine, characterized as residue, was discovered in a purse in the kitchen. Although there was no identification in the purse, it was located in a part of the home in which respondent-mother lived. Methamphetamine was also discovered in respondent-mother's possession when she was taken into custody after the raid. Moreover, regardless of whether there was evidence directly linking respondent-mother to the drugs and drug trafficking, respondent-mother allowed the children to reside in a home where there was overwhelming evidence of drug use and trafficking.

The physical condition of the home created an environmental risk to the children and the activities occurring within the home created a risk to the children's emotional, mental, and physical well-being. In sum, the evidence was sufficient to conclude that respondent-mother had not provided proper care and custody to the children and that there existed a likelihood of continuing harm to the children. In addition, the deplorable condition of the home and the criminal activity occurring within the home rendered it an unfit place for the children to live. Accordingly, the trial court did not clearly err when it found that the children came within its jurisdiction.

Next, both respondents argue that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. Again, we disagree.

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondents' parental rights pursuant to MCL 712A.19b(3)(g) and (j), which permit termination of parental rights under the following circumstances:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Considering the entire record, the trial court did not err when it terminated respondents' parental rights under these grounds.

After the court found by a preponderance of the evidence that the children came within its jurisdiction, petitioner offered during the dispositional phase additional evidence related to respondents' extensive CPS history. This evidence, in conjunction with that presented at the adjudication trial, established clear and convincing evidence to support termination of respondents' parental rights under MCL 712A.19b(3)(g) and (j).

As discussed earlier, there was overwhelming evidence that the family home was in deplorable condition, rendering it unfit for the children to live in. Moreover, despite respondents' assertions to the contrary, there was overwhelming evidence for the court to find that respondents were participating in drug-trafficking activities. At the very least, respondents allowed their children to live in a home that clearly was being used for criminal purposes. While this evidence was sufficient to meet the evidentiary burden for establishing jurisdiction, it also met the higher standard of proof employed when determining whether there existed a statutory ground to terminate parental rights. That is, the evidence clearly and convincingly showed that respondents failed to provide proper care and custody of their children and that the children were at risk of harm in respondents' care.

Moreover, the additional evidence presented during the dispositional phase established that there was no reasonable expectation that respondents would be able to provide proper care and custody for their children within a reasonable time. This conclusion is supported by respondents' extensive CPS history. Between 2009 and 2018, CPS investigated the family 22 times. Most recently, in February 2014, CPS investigated respondents for neglect, substance abuse, unstable housing, and domestic violence. Respondents were offered services, but their progress was insufficient and, as a consequence, the children were removed from their care in July 2014. While the children were eventually returned to the home in December 2015, they were removed again when respondent-mother relapsed in February 2016. During 2016, respondents were again offered a multitude of services designed to address their substance abuse issues and parenting skills. Eventually, the children were again returned to respondents' care in December 2016. The children were removed for a third time following the raid at respondents' home in December 2018. Respondent-mother acknowledged that between 2013 and 2018, they had been offered 37 months of services. These services included substance abuse and domestic violence counseling, individual counseling, and drug screens. On multiple occasions, respondents were offered intensive in-home assistance. While respondents may have participated in the services offered, it is evident by the pattern of their progress, or lack of progress, that they did not benefit from those services.

Despite a multitude of services, respondents have failed to demonstrate that they can safely parent their children. Respondents have been unable to achieve and maintain a substance-free lifestyle. In addition to discovering drugs and drug paraphernalia in respondents' possession during the 2018 raid, three days after the raid, both respondents tested positive for methamphetamine and amphetamine. Respondents clearly continued to struggle with substance abuse. Further, their parenting skills had not improved as evidenced by the fact that they allowed their children to live in squalor and in a home being used for drug trafficking. Domestic violence was also a pervasive and persistent theme with respondents. Respondent-mother admitted that

respondent-father had physically and verbally abused her since 2013. She also admitted that the abuse occurred in the children's presence, and often compelled the children to intervene in the altercations.[1]

While respondents may have benefited from services in the past, their history demonstrates that they cannot sustain any forward momentum. Indeed, respondents only appear to make progress when they are under the watchful eyes of the court, CPS, and DHHS. When this supervision was removed, they quickly regressed. Indeed, respondents' transgressions have clearly escalated despite being offered services over several years. Respondents clearly lack the motivation to put their children's needs ahead of their own. Consequently, clear and convincing evidence supports the trial court's finding that there existed no reasonable expectation that respondents would be able to provide proper care and custody within a reasonable time.

In sum, in the five years that preceded the termination of their parental rights, respondents had been provided with extensive services to improve their parenting skills and address their substance abuse issues. Notwithstanding these efforts, they never demonstrated that they can provide a safe and stable home for their children. Accordingly, the trial court did not clearly err when it terminated respondents' parental rights under MCL 712A.19b(3)(g) and (j).

Lastly, respondent-mother challenges the trial court's finding that termination of her parental rights was in the children's best interests. We find no merit to her arguments. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *Id.* at 129.

The trial court did not clearly err when it found that termination of respondent-mother's parental rights was in the children's best interests. Respondent-mother argues that in the past she has demonstrated the capacity to be an "adequate" parent for "lengthy stretches" of time. However, children require a parent who can provide them with a safe, stable, and permanent home. The evidence overwhelmingly established that respondent-mother lacked the skills

---

[1] A parent's parental rights may not be terminated on the basis of being a victim of domestic violence, but may be terminated on the basis of perpetrating domestic violence. *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). Thus, the domestic violence at issue in this matter may only be held against respondent-father. Nevertheless, ample other grounds existed for terminating the parental rights of both parents.

necessary to safely parent her children on a continuing basis. She also was unable to provide a stable, permanent, and safe environment for her children to thrive. She asserts that termination was not in the children's best interests because a bond existed between her and the children. While she may have a bond with her children, this factor did not outweigh the children's need for a safe and stable home free from drug abuse, domestic violence, criminality, and overwhelming environmental neglect. The trial court did not clearly err when it found that termination of respondent-mother's parental rights was in the children's best interests.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro